UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SUZE JOSEPH,

        Plaintiff,

-against-

MICHAEL J. ASTRUE, Commissioner of
Social Security

        Defendant.
------------------------------------------------------------------x

NOT FOR PUBLICATION
MEMORANDUM & ORDER
09-CV-4208 (CBA)

AMON, Chief United States District Judge:

      Plaintiff Suze Joseph has petitioned for review of the Commissioner's denial of disability benefits. Both parties have moved for judgment on the pleadings. For the reasons stated herein, the defendant's motion for judgment on the pleadings is granted, and plaintiff's motion is denied.

**I.    Background**

      Plaintiff was born in 1959, graduated high school and completed two years of college. (Tr. 80, 240.) She last worked in February 2003 as a mental health aide. (Tr. 242, 251.) She was initially suspended from work in 2003 due to allegations arising from an incident with a patient. (Tr. 247.) After completing a three month suspension (Tr. 247), she decided not to return to work allegedly due to pain. (Tr. 251.) Prior to 2003, plaintiff suffered at least two work-related accidents. In March 1998, she was apparently assaulted by a mentally ill patient, and hit by a chair in the right shoulder and right knee. (Tr. 141.) In December 2001, she was again assaulted by a patient and had a door close on her right arm. (Tr. 142.)

      Plaintiff testified that she has a driver's license, but does not drive. (Tr. 261.) She can take the bus or subway, but her cousin usually drives her when she needs to go somewhere. (Id.) She traveled to Haiti for a funeral in August 2007, and she travels to Miami every year where she

1

stays with her mother and sister for three months. (Tr. 261-62.) Plaintiff lives with her cousin. She stated that she does not perform any cooking or cleaning. (Tr. 264.) She denied exercising, but stated that she walks around the block once a day. (Tr. 266.) She explained that her medication makes her drowsy. (Tr. 265.) Plaintiff testified that she can lift five to ten pounds, sit about fifteen to twenty minutes before having to stand up, and can stand ten to fifteen minutes. (Tr. 269.) She stated that she has to lie down several times a day due to pain. (Tr. 270.)

### A. Medical Evidence

#### 1. *Prior to Onset Date*

Plaintiff began treatment with Dr. Paul Lerner on December 28, 2001, for an injury to her right shoulder. (Tr. 143-46.) Examination of plaintiff's head and neck was normal. (Tr. 144.) Active range of motion in the right shoulder was restricted on flexion, extension and abduction and was associated with pain. (Id.) Active range of motion of the neck revealed a mild degree of restriction on extension and was associated with discomfort. (Id.) Straight leg raising was negative. (Id.) Strength in the right deltoid, supraspinatus, infraspinatus and pectoralis muscles was 4/5. (Tr. 145.) Muscle bulk, tone and motor power were otherwise preserved without fasciculation, tremor or dysmetria. (Id.) Sensation was intact to light touch, vibration and proprioception. (Id.) The biceps and brachioradialis deep tendon reflexes on the right were present but depressed when compared to the left. (Tr. 145) Plaintiff's gait and station were normal and steady. (Id.)

Dr. Lerner's impressions were exacerbation of right shoulder strain and internal derangement and cervical strain with mid-segment radiculitis/radiculopathy and exacerbation of lumbar strain. (Id.) He recommended chiropractic treatment and physical therapy. (Id.) He prescribed Celebrex and Zanaflex. (Id.) He requested authorization for electromyogram/nerve

2

conduction velocity testing of the upper extremities to evaluate for suspected radiculopathy. (Tr. 145-46.)  Dr. Lerner opined that plaintiff was totally disabled.  (Tr. 146.)  On March 22, 2002, plaintiff had no new complaints, and her examination was unchanged.  (Tr. 140.)

### 2. Relevant Period

Plaintiff next saw Dr. Lerner on May 2, 2003, after undergoing right shoulder surgery. (Tr. 138-39.)  She indicated that despite the surgery and a course of physical therapy, she still had shoulder pain. (Id.)  Plaintiff also claimed that she had pain in the right forearm as well as the neck.  (Id.)  On examination, extension and lateral bending of the neck to the right caused pain radiating into the right arm. (Tr. 138.) There was tenderness over the extensor compartment in the dorsal forearm, which was made worse with dorsiflexion of the wrist. (Id.)  Dr. Lerner noted that this was consistent with tendinitis. (Id.)  There was also some tenderness over the epicondyle. (Id.)  Both active and passive ranges of motion of the shoulder were restricted and associated with discomfort.  (Id.)  Plaintiff had discomfort to percussion over the spine and to palpation over the paravertebral muscles.  (Id.)  Biceps and brachioradialis reflexes were present, but depressed on the right when compared to the left.  (Id.)  Plaintiff had been using Hydrocodone to temporarily relieve pain.  (Id.)

Dr. Lerner's impressions were residual shoulder joint pain, cervical strain with signs and symptoms of radiculopathy, tendinitis/epicondylitis affecting the right arm and constipation due to narcotic use.  (Tr. 138.)  He restarted plaintiff on Celebrex.  (Id.)  Dr. Lerner recommended that plaintiff return to physical therapy for the right upper extremity including the shoulder and forearm region. (Id.)  He also indicated that she should continue chiropractic treatment for the neck.  (Id.)  Dr. Lerner opined that plaintiff was totally disabled.  (Id.)  Follow up visits to Dr. Lerner from July 2003 to May 2004 are consistent with prior findings.  (Tr. 124-37.)

3

An MRI of plaintiff's cervical spine was performed in September 2003. The report of the MRI noted shallow disc bulges at the C3-4, C4-5, C5-6, and C6-7 disc space levels without evidence of cord impingement, central or neural foraminal stenosis. (Tr. 180.) It further noted that preservation of disc space height is seen at each level with loss of disc signal, and that "[t]here is no evidence of herniated disc or loss of disc space height at C2-3 or C7-T1." (Id.)

On August 30, 2004, plaintiff was examined by orthopedic surgeon Dr. Eduardo Alvarez in connection with her Workers' Compensation claim. (Tr. 171-75.) Upon examination, plaintiff did not appear to be in any physical distress. (Tr. 173.) She had difficulty removing her blouse. (Id.) Plaintiff could walk on heels and toes and get on and off the examination table without difficulty. (Id.) Range of motion of the lumbar spine was limited by pain. (Id.) Plaintiff also complained of pain and tenderness along the spinous processes of the lumbosacral spine extending to the sacroiliac joints on both sides. (Id.) There were no spasms and straight leg raising was negative. (Id.) There were no motor, sensory or reflex changes, except for diffuse hypoesthesia in the right arm affecting all fingers. (Id.) Shoulders were symmetric and there was no atrophy noted. (Tr. 174) Range of motion of the right shoulder was reportedly limited by pain. (Id.) Range of motion of the left shoulder was normal. (Id.)

Dr. Alvarez's impressions were strain/sprain of the cervicothoracic spine, resolved, strain/sprain of the lumbosacral spine, resolved, and status post right shoulder surgery with residual pain and restriction of movement. (Id.) He concluded, "[t]here is no objective evidence of any ongoing causally related orthopedic disability to the neck or back." (Id.) He also stated that plaintiff's right shoulder injury was subject to schedule loss evaluation, and that based on Workers' Compensation Board Medical Guidelines, there was a forty percent loss of use of the right arm. (Tr. 174.)

Plaintiff underwent an independent chiropractic evaluation by Dr. Robert T. McVeigh on October 26, 2004. (Tr. 166-70.) Plaintiff appeared "very uncomfortable" during the evaluation. (Tr. 167-168.) At times, she needed to be assisted by her uncle to stand. (Id.) Passive range of motion of the cervical spine in all ranges of motion was reduced with pain noted. (Id.) Active range of motion of the cervical spine was reduced to 40 degrees in flexion, 30 degrees in extension, 20 degrees in left and right lateral flexion and 40 degrees in left rotation as well as 60 degrees in right rotation with pain noted in all ranges of motion. (Id.) Active range of motion of the lumbar spine was reduced to 40 degrees flexion, 10 degrees in extension, 10 degrees in left and right lateral flexion and 20 degrees in left and right rotation with lower lumbar discomfort. (Id.) Resisted isometric range of motion of the cervical spine, including flexion, extension, left and right lateral flexion and left and right rotation were +5. (Id.) Based upon his evaluation, Dr. McVeigh's diagnoses were chronic cervical sprain/strain and chronic lumbosacral sprain/strain. (Tr. 169.) He concluded that according to the Workers Compensation Board guidelines, plaintiff had a mild cervical and lumbar disability. (Tr. 169.) Dr. McVeigh offered the same opinion of plaintiff's disability upon reevaluation on May 31, 2005. (Tr. 161-65.) He concluded that no further chiropractic care was warranted. (Tr. 164.)

Plaintiff followed up with Dr. Lerner in October and November 2004 and January, March, June and August 2005. (Tr. 120-31.) Her condition was not significantly changed, though she complained of some worsened pain in the neck and right shoulder in June 2005. (Id.) She had been switched from Amitriptyline to Nortriptyline to reduce daytime sleepiness. (Tr. 131.) Plaintiff reported that her headaches were "much better" since beginning the Nortriptyline. (Tr. 130.) In January, 2005, he prescribed Mobic and Pamelor. (Tr. 125.) EMG/NCV studies of plaintiff's upper extremities performed on October 3, 2005 were normal. (Tr. 121-22.) Followup

visits with Dr. Lerner from October 2005 to May 2006 showed no changes in plaintiff's condition. (Tr. 116-19, 153.)

On June 14, 2006, plaintiff underwent an independent medical examination by orthopedic surgeon, Dr. Sanford Wert. (Tr. 154-59.) Upon examination by Dr. Wert, plaintiff complained of pain in the cervical spine, right shoulder and lumbosacral spine radiating into her legs. (Tr. 155.) She walked with a limp and exhibited difficulty mounting and dismounting the examining table. (Tr. 156.) Plaintiff cried throughout most of the examination. (Id.) On examination of the cervical spine, plaintiff complained of pain and there was evidence of palpable tenderness about the right paraspinal region. (Tr. 157.) There was no muscle spasm. Range of motion of the cervical spine revealed flexion to 55 degrees (70 - 90 degrees being normal), extension to 30 degrees (35 degrees being normal), side bending to 40 degrees bilaterally (40 degrees being normal) and rotation to 55 degrees bilaterally (75 – 90 degrees being normal). (Id.) Examination of the right shoulder revealed no tenderness to deep palpation, but plaintiff complained of pain. (Id.) There was no deltoid atrophy. (Id.) Range of motion of the right shoulder revealed flexion to 100 degrees (180 degrees being normal), abduction to 90 degrees (180 degrees being normal), internal and external rotations were to 90 degrees (90 degrees being normal). (Id.) Upper extremity reflexes were 1+ bilaterally and muscle strength was 5/5 bilaterally. (Id.)

On examination of the lumbosacral spine, there was no tenderness or muscle spasm, but plaintiff complained of pain. (Id.) Range of motion of the lumbosacral spine revealed flexion to 50 degrees (70 - 90 degrees being normal), extension to 35 degrees (35 degrees being normal), side bending to 30 degrees bilaterally (30 degrees being normal) and rotation to 0 degrees bilaterally (35 degrees being normal). (Id.) Lower extremity reflexes were 1+ bilaterally and muscle strength was 5/5. (Id.) Due to complaints of pain, plaintiff refused the straight leg raise

test in both legs.  However, re-attempt with knees bent demonstrated a positive "confusion" test.  Dr. Wert explains that a "confusion test" is "conducted to determine whether the claimant is trying to alter [straight leg raising] test results. . . . The straight leg raising test is re-attempted with the knee bent.  By bending the knee, the pressure on the sciatic nerve should be eliminated.  The claimant should be able to flex the hip and raise the leg with the knee bent without pain when sciatica is present.  When the claimant complains of pain, then the 'confusion' test is positive."  (Tr. 157.) (Id.)  The confusion test, therefore, indicates that plaintiff may have been attempting to alter her test results.

Dr. Wert's diagnoses were cervical sprain, status post arthroscopy of the right shoulder and lumbosacral sprain. (Tr. 158.)  Based upon his evaluation, Dr. Wert concluded that plaintiff had a mild partial disability as to her right shoulder. (Id.)  He indicated that she should limit her lifting to less than thirty-five pounds and refrain from overhead reaching with the right upper extremity. (Id.)  Dr. Wert commented that plaintiff complained of pain upon light touch and permitted restricted movements throughout most of the examination. (Id.)  He stated that he found her responses to be somewhat excessive or, more likely, exaggerated. (Id.)  He concluded that plaintiff was capable of working in a light duty capacity with the aforementioned restrictions. (Id.)

Plaintiff underwent a consultative orthopedic examination by Dr. Rose Chan on September 13, 2007.  (Tr. 211-14.)  Plaintiff complained of back pain, neck pain with headaches and pain radiating from the neck down to the shoulder on the right. (Id.)  She described the pain as constant and sharp. (Id.)  Upon examination, plaintiff was in no acute distress. (Id.)  However, she moved slowly throughout the examination and kept her eyes closed at times. (Id.)  She did not localize pain to any specific area. (Id.)  Her gait and station were normal and she

could walk on heels and toes without difficulty. (Id.) She could perform a full squat, needed no assistance during the examination and could rise from a chair without difficulty. (Id.) Plaintiff's hand and finger dexterity were intact. (Id.) Grip strength was 5/5 bilaterally. (Id.)

Plaintiff had full range of motion of the cervical spine. (Id.) There was no paracervical pain, spasm, or trigger points. (Id.) She also had full range of motion in the upper extremities. There was no joint inflammation, effusion or instability. (Id.) Muscle strength was 5/5 and there was no muscle atrophy or sensory abnormality. (Id.) Reflexes were physiologic and equal. (Id.) Plaintiff had full range of motion of the thoracic and lumbar spines. (Id.) There was no spinal, paraspinal, sacroiliac joint or sciatic notch tenderness. (Id.) There was no spasm, scoliosis or kyphosis. (Id.) Straight leg raise test was negative. (Id.) There were no trigger points. (Id.) Plaintiff had full range of motion in the lower extremities. (Id.) Strength was 5/5 and there was no muscle atrophy or sensory abnormality. (Id.) Reflexes were physiologic and equal. (Id.) There was no joint effusion, inflammation or instability. (Id.) Dr. Chan diagnosed chronic back pain, chronic neck pain, post right shoulder arthroscopy and a history of right lateral epicondylitis. (Id.) She concluded that plaintiff had "no limitations based on objective findings" of the examination. (Id.)

Dr. Abessinio, plaintiff's chiropractor, prepared a medical assessment of plaintiff's abilities to perform work-related functions on February 29, 2008. (Tr. 224-24A.) Plaintiff underwent chiropractic treatment from February 1, 2002 through May 10, 2006. (Tr. 150-51, 160, 176-86.) He stated that plaintiff could lift a maximum of seven to eight pounds occasionally and five to six pounds frequently. (Tr. 224.) Plaintiff could stand/walk for one to two hours a day and for fifteen to twenty minutes at a time without interruption. (Id.) Additionally, plaintiff could sit for two hours a day and for ten to fifteen minutes at a time

without interruption. (Id.) Dr. Abessinio indicated that plaintiff could never climb, stoop, kneel, crouch or crawl due to cervical disc bulging complicated by lumbar disc radiculopathy. (Id.) Plaintiff's ability to reach, push/pull and handle were limited due to cervical and lumbar nerve root tractions injuries. (Tr. 224A.)

### B. Procedural History

Plaintiff filed an application for disability benefits on June 22, 2006. (See Tr. 58.1.) She claimed that she had been unable to work since June 10, 2003, due to back, neck, and shoulder pain. (Tr. 75-76.) The application was denied. (Tr. 24, 29-32.) Plaintiff then filed an untimely request for an administrative hearing on December 6, 2006. (Tr. 35-36.) On April 18, 2007, Administrative Law Judge (ALJ) Brian W. Lemoine, dismissed plaintiff's request for a hearing because he found that plaintiff did not have good cause for the late filing. (Tr. 25-28.) Plaintiff requested Appeals Council review (Tr. 47), and, on October 18, 2007, the Appeals Council remanded the matter for a plenary hearing. (Tr. 49-51.) Accordingly, an administrative hearing was held on March 3, 2008, before ALJ David Nisnewitz. (Tr. 234-74.) ALJ Nisnewitz considered the case *de novo* and, on October 22, 2008, found that plaintiff was not disabled within the meaning of the Act. (Tr. 12-23.) The Appeals Council denied the request for review of ALJ Nisnewitz's decision on August 20, 2009. (Tr. 5-8.) This action followed.

## II.  Standard of Review

"In reviewing the Commissioner's denial of benefits, the courts are to uphold the decision unless it is not supported by substantial evidence or is based on an error of law." Melville v. Apfel, 198 F.3d 45, 51-52 (2d Cir. 1999) (citing Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a

9

reasonable mind might accept as adequate to support a conclusion.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In making this determination, the reviewing court is to defer to the ALJ's resolutions of conflicting evidence. See Clark v. Comm'r of Social Security, 143 F.3d 115, 118 (2d Cir. 1998) ("In reviewing the denial of SSI benefits, we must determine whether the SSA's decision was supported by substantial evidence and based on the proper legal standard, keeping in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record."). Additionally, the reviewing court is not to engage in an independent analysis of the claim for benefits at issue. See Melville, 198 F.3d at 52 ("It is not the function of the reviewing court to decide de novo whether a claimant was disabled . . . or to answer in the first instance the inquiries posed by the five step analysis set out in the SSA regulations.").

The Commissioner uses a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The Commissioner first determines whether the claimant is working; if he is engaging in substantial gainful activity, the claim will be denied without consideration of any medical evidence. 20 C.F.R. § 404.1520(a)(4) (i), 404.1520(b). If the claimant is not working, the Commissioner determines whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 to 20 C.F.R. Supbart P of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity ("RFC") to perform his past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e)-(f), 404.1560(b). The claimant bears the

burden of proving that he cannot return to his former type of work. Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999); Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995). If the claimant's RFC does not permit him to engage in his prior work, the fifth and final step requires the Commissioner to determine whether the claimant, in light of his RFC, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." See Decker v. Harris, 647 F.2d 291, 298 (2d Cir. 1981); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). If he cannot, benefits are awarded. Dixon v. Heckler, 785 F.2d 1102, 1103 (2d Cir. 1986). At the fifth step in the analysis, the burden falls on the Commissioner to establish that there is gainful work in the national economy that the claimant could perform. See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir.2004) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) and Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000)). With these standards in mind, the Court will now address the instant claim for benefits.

**III.   Discussion**

For the reasons stated below, the Court finds that the ALJ's findings are supported by substantial evidence in the record and that there is no error of law meriting a remand. In plaintiff's moving papers, and again at oral argument, plaintiff confirmed that the record is complete and that a remand is not required for further factual development. Accordingly, defendant's motion for judgment on the pleadings is granted, and plaintiff's cross-motion is denied.

   A. *Substantial Evidence*

The ALJ found that plaintiff retained the RFC to perform sedentary work. Tr. 19; see 20 C.F.R. § 404.1567(a). Sedentary work requires the ability to lift and/or carry up to a maximum of ten pounds. 20 C.F.R. § 404.1567(a). Sedentary work also requires the ability to sit up to six

11

hours a day and stand and/or walk, off and on, up to a total of two hours a day. Social Security Ruling (SSR) 96-9p.

Substantial evidence of record supports the ALJ's RFC determination.  Dr. Rose Chan, who performed a consultative examination on September 13, 2007, concluded that plaintiff had no limitations based upon the objective findings of her examination. (Tr. 213.) Plaintiff's gait and station were normal and she could walk on heels and toes without difficulty. (Tr. 212.) Plaintiff could perform a full squat, needed no assistance during the examination and could rise from a chair without difficulty. (Id.) Plaintiff's hand and finger dexterity were intact. (Id.) Grip strength was 5/5 bilaterally. Plaintiff had full range of motion of the cervical spine. (Id.) There was no paracervical pain, spasm, or trigger points. (Id.) She also had full range of motion in the upper extremities. (Id.) There was no joint inflammation, effusion or instability. (Id.) Muscle strength was 5/5 and there was no muscle atrophy or sensory abnormality. (Id.) Reflexes were physiologic and equal. (Id.) Plaintiff had full range of motion of the thoracic and lumbar spines. (Tr. 213.) There was no spinal, paraspinal, SI joint or sciatic notch tenderness. (Id.) There was no spasm, scoliosis or kyphosis. (Id.) Straight leg raise test was negative. (Id.) There were no trigger points. (Id.) Plaintiff had full range of motion in the lower extremities. (Id.) Strength was full (5/5) and there was no muscle atrophy or sensory abnormality. (Id.) Reflexes were physiologic and equal. (Id.) There was no joint effusion, inflammation or instability. (Id.) Because Dr. Chan's assessment was well supported by the objective evidence, it constitutes substantial evidence in support of the ALJ's RFC finding.

Dr. Sanford Wert similarly opined that based upon his evaluation, plaintiff had only a mild partial disability as to her right shoulder. (Tr. 158.) Dr. Wert indicated that she should limit her lifting to less than thirty-five pounds and refrain from overhead reaching with the right

upper extremity. (Id.) Dr. Wert also commented that although plaintiff complained of pain upon light touch and restricted movements throughout most the examination were somewhat excessive or, more likely, exaggerated. (Id.) He concluded that plaintiff was capable of working in a light duty capacity with the aforementioned restrictions using her upper right extremity. (Id.)

Objective medical evidence corroborates the conclusions of the consultative examiners. An MRI, dated September 2, 2003, showed "shallow disc bulges" at the C3-4, C4-5, C5-6 and C6-7 disc space levels, but with no evidence of cord impingement, central or neural foraminal stenosis, herniated disk, or loss of disc space height at C2-3 or C7-T1. (Tr. 180.) An EMG/NCV study was normal. (Tr. 121-22.)

Based upon her RFC, the ALJ found that plaintiff could not return to her past relevant job as a developmental aide, which is medium to heavy work. (Tr. 21-22.) Thus, he proceeded to consider whether she could perform any work in the national economy. (Id.) At step five of the sequential evaluation, an ALJ must determine whether, based upon a claimant's RFC and vocational profile, she can perform other work in the national economy. 20 C.F.R. § 404.1560(c). Here, the ALJ found that plaintiff was a younger individual (age 48 at the time of the ALJ's decision) with greater than a high school education and no transferable skills from her past relevant work. (Tr. 22); see 20 C.F.R. §§ 404.1563(c), 404.1564, 404.1565. Through December 21, 2004, the day before plaintiff's forty-fifth birthday, these factual findings, together with plaintiff's RFC for sedentary work, correspond with Medical-Vocational Rule 201.28, which directs a finding of not disabled. On or after December 22, 2004, the ALJ's findings would correspond with Rule 201.21, which would likewise direct a finding of not disabled. Where the findings of fact made with respect to an individual's age, education, work experience and residual functional capacity coincide with all the criteria of a rule, that rule directs a

13

conclusion as to whether an individual is disabled. See 20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983). Thus, under the applicable rules, the plaintiff correctly was found not disabled.

### B. No Error of Law

Plaintiff argues that the ALJ erred in assessing her credibility, applying the treating physician's rule, providing reasons for the ALJ's RFC determination, and failing to assess her severe disabilities in combination.

#### 1. Credibility

The ALJ did not err in assessing plaintiff's credibility. "In determining whether a claimant is disabled, the Commissioner is required to consider all of the claimant's symptoms, including subjective complaints . . . ." McCarthy v. Astrue, No. 07 Civ. 0300(JCF), 2007 WL 4444976, at *8 (S.D.N.Y. Dec. 18, 2007). "It is the function of the Commissioner, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Secretary, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). "[A] finding on the individual's credibility with regard to symptom descriptions is acceptable when, . . . it includes precise reasoning, is supported by evidence in the case record and makes clear, both to the individual and to any subsequent reviewers, the weight the adjudicator gave the claimant's statements and the reasons for that weight." Snyder v. Barnhart, 323 F. Supp. 2d 542, 546-47 (S.D.N.Y. 2004).

Section 416.929(c)(3) of Title 20 of the C.F.R., as interpreted in SSR 96-7p, requires an ALJ to follow a two-step process to evaluate a plaintiff's testimony regarding her symptoms. First, "the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) . . . that could reasonably be expected to produce the

14

individual's . . . symptoms . . . ." SSR 96-7p, 1996 WL 374186 at *2. Second, "the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . ." Id. The kinds of evidence the ALJ will consider in conducting his analysis include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Id. at *2-3.

      Here, the ALJ conducted sufficient analysis of the plaintiff's credibility. The ALJ noted that based on Dr. Werth's "confusion test," there is evidence of symptom exaggeration. He notes that plaintiff has not required hospitalization or surgical intervention since her 2002 shoulder surgery. The ALJ also noted that Plaintiff did a reasonable range of daily living activities, is independent in self-care, helps maintain her household, socializes with others, and attends religious services. That opinion is corroborated by the record. Dr. Chan reports that plaintiff's activities of daily living include doing the laundry, light shopping, showers, bathing, and dressing, though plaintiff said she at times needs help. (Tr. 212.)

      Plaintiff argues that the ALJ did not consider the type, dosage, effectiveness and side effects of the plaintiff's medications, the plaintiff's chiropractic treatment, and the plaintiff's long and honorable work history. However, the ALJ noted that plaintiff's "medications have not

15

been unusual for either type or dosage." Plaintiff attached print outs from various websites describing plaintiff's medications, however, the court does not find evidence in the record to sufficiently controvert the ALJ's conclusion. Although the ALJ did not specifically address plaintiff's chiropractic treatment in assessing her credibility, the ALJ did find that "claimant's medical treatment has been conservative," and elsewhere discusses her treatment by Paul Abessinio. Finally, the ALJ's failure to explicitly consider plaintiff's work history in assessing her credibility does not undermine the ALJ's determination. See Wavercak v. Astrue, 420 Fed. Appx. 91, 94 (2d Cir. 2011) ("That [plaintiff's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination."). The Court finds that there is substantial evidence in the record to support the ALJ's assessment of the plaintiff's credibility.

**2. Treating Physician's Rule**

Plaintiff argues that the ALJ did not properly adhere to the "treating physician" rule. The treating physician rule "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see also 20 C.F.R. § 404.1527(d)(2); Rodriguez v. Barnhart, No. 04 Civ. 949, 2004 WL 2997876, at *7 (S.D.N.Y. Dec. 28, 2004). If a treating physician is not given controlling weight, "the Commissioner must give 'good reasons in his notice of determination or decision for the weight he gives [the claimant's] treating source's opinion.'" Botta v. Barnhart, 475 F. Supp. 2d 174, 187 (E.D.N.Y. 2007) (quoting Clark v. Comm'r of Social Security, 143 F.3d 115, 118 (2d Cir. 1998)). Failure to give good reasons is often a grounds for remand. Botta, 475 F. Supp. 2d at 187 (citing Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998)); see also Rodriguez, 2004 WL

2997876 at *9 ("The failure to follow the procedure set forth in the regulations constitutes legal error and is grounds for a remand."). Where a finding is reserved to the Commissioner, "the Social Security Administration considers the data that the treating physicians provide but draws its own conclusions as to whether those data indicate disability." Snell v. Apfel, 177 F.3d 128, 133 (2d. Cir. 1999).

Here, plaintiff's treating physician, Dr. Paul Lerner, indicated that plaintiff is "totally disabled." (Tr. 146.)  However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." Snell 177 F.3d at 133. Moreover, to the extent that the ALJ rejects Dr. Lerner's opinion, the ALJ gives adequate reasons for not affording it great or controlling weight. As the ALJ explains, examination findings from 2002 were mild to moderate and no new abnormalities were described at subsequent follow up visits through 2006. (Tr. 143-46, 116-40.) Additionally, although an MRI showed "shallow disc bulges" in the cervical spine, there was no evidence of cord impingement, central or neural foraminal stenois, herniated disk, or loss of disc space height at C2-3 or C7-T1. Likewise, an EMG/NCV study, which was normal, did not support Dr. Lerner's conclusion.

The ALJ was also not required to give controlling weight to the RFC findings of Dr. Philip Abessinio, who, as a chiropractor, is not considered a "medical source," under the regulations. See 20 C.F.R. § 404.1513(d). Dr. Abessinio found that plaintiff could not even sit for more than two hours in an eight hour work day. However, that opinion is not substantiated by any other opinion proffered by a medical source.

Moreover, although the Court does not rely on this ground, the ALJ's opinion is arguably consistent with Dr. Lerner's conclusion regarding her disability. Dr. Lerner's records alternatively report that plaintiff is either "disabled" or "disabled for her occupation." To the

17

extent Dr. Lerner's notations merely recognizes that plaintiff could not return to her prior occupation, the ALJ likewise found that plaintiff could not perform any past relevant work.

### 3. Combination of Impairments

Plaintiff next argues that the ALJ failed to consider the plaintiff's conditions in combination, citing Kolodnay v. Schwe, 680 F.2d 878 (2d Cir. 1982) (remanding where ALJ failed to consider claimant's hypertension in combination with obesity in determining claimant did not suffer severe impairment at step-two). Here, the ALJ specifically considers plaintiff's alleged "combination of orthopedic impairments secondary to a work related injury," including plaintiff's back and shoulder problems. The Court finds that the ALJ adequately considered plaintiff's combination of impairments.

### 4. RFC Determination.

Finally, plaintiff argues that the decision fails to adequately justify the ALJ's determination that plaintiff was capable of sedentary work. In determining the plaintiff's residual functional capacity, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ "must discuss the [plaintiff's] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) . . . and describe the maximum amount of each work-related activity the individual can perform . . . ." Id. at *7 (internal footnotes omitted). However, "[w]here the ALJ does not explain his rationale for a particular decision, courts may 'look to other portions of the ALJ's decision and to clearly credible evidence,' in order to determine if substantial evidence

18

supports the ALJ's conclusion." Yates v. Commissioner of Social Sec., No. 5:06-CV-1406 (FJS), 2011 WL 705160, at *6 (N.D.N.Y. February 22, 2011) (quoting Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982). Here, the ALJ adequately conducts a function-by-function analysis before concluding that plaintiff was capable of performing sedentary work. The ALJ concludes:

> There is no evidence that the claimant is restricted in terms of sitting. Standing and walking are somewhat restricted due to lower back pain and neck pain. She can stand and walk for less than 6 hours in an 8 hour day. She can lift and carry up to 35 pounds occasionally, but must avoid overhead lifting activity due to pain and loss of motion in the right upper extremities. She has no meaningful loss of sensation, and no more than mild motor loss affecting the right upper extremity only. She has no non-exertional limitations and no loss of functioning in the areas of daily living, socializing, memory, adaption or in sustained attention and concentration.

Moreover, reference to the narrative portion of the ALJ's opinion shows that RFCs by Drs. Wert and Chan support the ALJ's opinion. In fact, the ALJ's opinion is more conservative than either of the consultative physicians in finding that plaintiff was capable of only sedentary, rather than light work.

## CONCLUSION

Accordingly, as the Court otherwise finds that the ALJ applied the five-step process and that that the ALJ's opinion is supported by substantial evidence, the defendant's motion for judgment on the pleadings is granted and ALJ Nisnewitz's decision is affirmed. Plaintiff's cross-motion for judgment on the pleadings is denied. The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       September 30, 2011

                                     /s/
                                  Carol Bagley Amon
                                  Chief United States District Judge